UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

―――――――――――――――――――――――――――――――――――――――――――――――――――――

ANTONIO D. SHEPPARD,

                Plaintiff,

v.                                         Case No. 24-CV-539

LT. ANTHONY MATUSHAK, *et al.*,

                Defendants.

―――――――――――――――――――――――――――――――――――――――――――――――――――――

DECISION AND ORDER

―――――――――――――――――――――――――――――――――――――――――――――――――――――

Plaintiff Antonio D. Sheppard, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Sheppard was allowed to proceed on a conditions of confinement claim pursuant to the Eighth Amendment because the defendants allegedly left him in a feces-covered cell for 33 days. The parties filed cross-motions for summary judgment, which are fully briefed and ready for a decision. (ECF Nos. 22, 33) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 18.)

PRELIMINARY MATTERS

Sheppard filed a motion for leave to file a surreply wherein he wishes to supplement his interrogatories and declarations. (ECF No. 68.) Also in that motion he moves to strike William Swiekatowski's declaration and parts of his own declaration and that of his jailhouse lawyer, Mitchell Zimmerman.

Sheppard states that he and Zimmerman made "unfortunate misstatements of material fact" when responding to the defendants' proposed findings of fact and motion for summary judgment. (ECF No. 68 at 2.) Sheppard states that, in his original response materials, he was mistaken as to which vent had feces in it and which vent blew into the room and which vent blew out of the room. (*Id.*) Sheppard also contends that if these misstatements are allowed to stand, they are fatal to his case because he inadvertently conceded that the befouled vent was nowhere near his bed, desk or shower. (*Id.*; ECF No. 68-1 at 4.) However, Sheppard then argues that "[n]o matter where this vent was, the cell is so small that it would blow fecal particles all over the room." (ECF No. 68-1 at 4.) Thus, by Sheppard's own admission, this misstatement is not fatal to his case.

As for Sheppard's motion for leave to file a surreply, the court will grant it and consider the corrected statements of fact regarding the location of the vent. "The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3 626, 631 n. 2 (7th Cir. 2010)). "In some instances, allowing a filing of a surreply 'vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision.'" *Univ. Healthsystem Consortium v. United Health Group, Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (quoting *In re Sulfuric Acid Antitrust Litg.,* 231 F.R.D. 320, 329 (N.D. Ill. 2005)). While the court recognizes that the defendants believe that Sheppard's jailhouse lawyer is acting in bad faith and changing his declaration to include falsehoods solely

to increase the case's chances of survival, for the reasons explained below the location of the vent is immaterial to whether Sheppard suffered unconstitutional conditions of confinement.

Turning to Sheppard's contention that the court should strike Swiekatowski's declaration, Sheppard states that Swiekatowski testified to things outside of his knowledge because he was not employed as a video preservation specialist during the time that Sheppard requested video preservation. (ECF No. 68 at 2.) The defendants assert that Swiekatowski has the knowledge to testify about video preservation processes during the relevant time period because the processes are the same now as they were then. (ECF No. 69 at 10.) The court agrees with the defendants and finds that Swiekatowski is testifying to the general process and not about what specifically happened with the videos in question. The court denies Sheppard's motion to strike Swiekatowski's declaration.

As to the remaining requests to strike various portions of Sheppard's and Zimmerman's declarations, striking statements in a piecemeal fashion serves to confuse the record rather than clarify it. As such, the court denies Sheppard's motion to strike various portions of his and Zimmerman's declaration.

To the extent that Sheppard seeks to add information not specifically addressed above, the court denies his motion for leave to file a surreply to add those facts. Again, adding facts confuses the record. The court will consider all permitted evidence as appropriate in deciding the motion.

3

# FACTS

At all times relevant, Sheppard was incarcerated at Green Bay Correctional Institution, where all of the defendants worked as correctional staff. (ECF No. 35, ¶¶ 1-5.) On September 8, 2023, at approximately 9:44 a.m., Sheppard was placed in the Restrictive Housing Unit (RHU) in cell 332. (*Id.*, ¶ 6.) Sheppard states that the vents in the cell were smeared with feces and the cracks around the door had feces "crammed" in them. (ECF No. 62, ¶ 2.) He states that the cell smelled, overwhelmingly so at times, and that the vent "blew directly on to Plaintiff's bed, desk, and shower area." (*Id.*) He also states that, because of the way the vent operates, it was likely that fecal particles would be distributed throughout his cell, and it was possible that he could have ingested them. (*Id.*, ¶ 24; ECF No. 68-1 at 3-4.) Sheppard does not present any evidence that he was actually harmed as a result of exposure to fecal particles.

Once he realized the state of the vents, Sheppard began to complain to staff. (ECF No. 62, ¶ 3.) It is undisputed that Sheppard was given cleaning supplies on September 19, September 26, and October 3, 2023, with which to clean his cell. (ECF No. 35, ¶¶ 13-14.) These supplies "included a cleaning rag with cleaner, toilet brush, broom, and dustpan." (*Id.*) It is also undisputed that Sheppard's cell had running water and there was no limitation as to how much water Sheppard could use. (*Id.*, ¶¶ 15-16.) Sheppard states that these supplies did not allow him "to properly clean the cell." (ECF No. 62, ¶3.) He notes that the toilet brush "is little more than a cotton ball on a stick", which could not clean the surfaces Sheppard wanted to clean. (*Id.*, ¶ 9.) Sheppard believed his cell should have been power washed or attended to by janitorial staff. (*Id.*, ¶¶ 10, 31.)

It is undisputed that Sheppard remained in cell 332 until October 10, 2023, when he was removed to the treatment center, which is a step toward being released from RHU back into the general population. (ECF No. 62, ¶ 22.)

The defendants provide body camera video footage from two defendant officers recorded on September 30, 2023, at approximately 11:40 a.m., which the defendants assert unequivocally shows that Sheppard's cell was clean. (ECF Nos. 38-6; 38-7.) The first video, from defendant Scott Hansen's body camera, generally shows the state of the cell as it is viewed from outside the cell door. There are no obvious signs of feces on the door and the walls appear clean. As for the vents, the video shows that the vent in question is positioned on the ceiling near Sheppard's desk but the officer is too far away for the video to show the vent's state. (ECF No. 38-6 at 1:50-4:05.)

The second video, from non-defendant Officer Diedrick, shows the inside of Sheppard's cell from within the cell. Up close, there is no obvious signs of feces on the walls by the door or on the door. The video does not capture the inside of the vent or the vent at all, but Sheppard is heard describing what he believes is feces that is clumped "way up in" the vent. (ECF No. 38-7 at 2:10-4:47.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See*

5

*Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Sheppard claims that the defendants violated his Eighth Amendment rights by requiring that he remain in a cell with feces in it for 33 days. "The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measure of life's necessities' and (2) where prison

6

officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

No reasonable factfinder could conclude that the state of Sheppard's cell was so unclean that it denied Sheppard the minimal civilized measure of life's necessities. This case is directly analogous to *Lindell v. Pollard*, 558 F. Supp. 3d 734 (E.D. Wis. 2021). The plaintiff in *Lindell* stated that there was human feces "smeared on the inside of the cell door and around the door's window." *Id.* at 741. As here, there was body camera footage in *Lindell* that showed that the floor and the walls of the cell appeared clean, with no obvious signs of feces on the cell door. *Id.* Additional body camera footage showed an officer acknowledging that there was feces on the door. *Id.* The court also noted that staff provided the plaintiff in *Lindell* cleaning supplies of a type similar to those provided to Sheppard.

The *Lindell* court noted that instances of unconstitutional conditions of confinement concerning feces "were much more severe than those at issue here. They generally involved exposure to significant amounts of human feces along with other inhumane conditions such as lack of access to water, clogged sewage pipes, and exposure to fridged temperatures." *Id.* at 751 (listing cases). The court also found it was significant that the plaintiff "was not required to come into contact with the feces in order to eat, sleep, or bathe." *Id.* In short, the plaintiff's "minimal exposure to human feces, while undoubtedly unpleasant, did not pose a threat to his health or safety and was not so serious as to deprive him of basic human dignity." *Id.*

7

The same is true for Sheppard's exposure to feces. Although Sheppard states he was at risk of exposure to "fecal particles," he provided no evidence that such exposure had any impact on him. Regardless, it is undisputed that he did not have any direct contact with feces, as the presence of feces was (at most) limited to the inside of the vent and inside the cracks of the cell door. It is also undisputed that Sheppard had regular access to cleaning supplies and unlimited water, just like the plaintiff in *Lindell*. The fact that Sheppard believed the cleaning supplies inadequate to clean the cell or that the cell should have been power-washed is insufficient to establish a constitutional violation. The body camera videos demonstrate that there was no obvious presence of feces on the walls or the door, and the cell appeared relatively clean. As such, even taking the facts in the light most favorable to Sheppard, no reasonable factfinder could conclude that the conditions of his cell posed a serious risk to health and safety.

Summary judgment is granted in favor of the defendants.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted and Sheppard's motion for summary judgment is denied. The defendants also argued that they were entitled to qualified immunity but, because the court found in their favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Sheppard's motion for leave to file a surreply (ECF No. 68) is **GRANTED in part and DENIED in part** as

explained above. Sheppard's motion to strike Swiekatowski's declaration is **DENIED**. Sheppard's motion to strike various portions of his declaration and Mitchell Zimmerman's declaration is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 33) is **GRANTED.**

**IT IS FURTHER ORDERED** that Sheppard's motion for summary judgment (ECF No. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally

9

no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 25th day of July, 2025.

BY THE COURT

*William E. Duffin*
WILLIAM E. DUFFIN
United States Magistrate Judge